IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| ALAN COHEN and CAROL COHEN, his wife, individually and jointly, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) Civil Action No. 07-cv-1620 ) ) Judge Gary L. Lancaster |
| THE OHIO CASUALTY GROUP, | ) Magistrate Judge Cathy Bissoon ) |
| Defendant. | ) |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

**I.    RECOMMENDATION**

It is respectfully recommended that Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 7) be granted in part and denied in part, as discussed below.

**II.    REPORT**

**BACKGROUND**

This is an action brought by insureds who seek redress for their insurance company's allegedly wrongful conduct in connection with a claim they asserted under their insurance policy following an accidental house fire. The following allegations in Plaintiffs' Complaint are assumed to be true for purposes of Defendant's Motion to Dismiss.

Plaintiffs had purchased an insurance policy to cover damage to insure against certain perils to their property for the period of September 5, 2005 through September 5, 2006 (the "Policy"). (Compl. ¶ 3.) On March 25, 2006, an accidental fire occurred at Plaintiffs' home, resulting in damage to their home. Id. at ¶ 4. Plaintiffs timely reported the fire to Defendant and also timely filed a claim under the Policy. Id. at ¶ 5. Plaintiffs then sought to have their home

repaired and restored from the fire damage.  Id. at ¶ 6.  To this end, Defendant allegedly directed Plaintiffs to retain the services of a general contractor, Servpro of Fox Chapel/Springdale a.k.a. Servpro of Fox Chapel ("Servpro").  Id.  Plaintiffs allege that Defendant represented to them that Servpro "specializ[ed] in cleanup and restoration of property after fire, water and/or smoke damage" and that it "would restore the property and its contents to a pre-loss condition and that Servpro would complete all work and restoration efforts in a timely and workmanlike fashion consistent with industries standards and applicable local building codes."  Id. at ¶¶ 6-8.

On May 6, 2006, Servpro provided a proposal to Plaintiffs for the cleanup and restoration of their property.  Id. at ¶ 10.  On May 8, 2006, Plaintiffs accepted Servpro's proposal.  Id. at ¶ 12.  Plaintiffs allege that they ultimately accepted the proposal because of Defendant's repeated "urgings, solicitations and direction" to retain Servpro's services.  Id. at ¶¶ 10-12.

Plaintiffs allege that Servpro failed to perform the work "in a timely and workmanlike fashion consistent with industry standards and applicable building codes."  Id. at ¶¶ 14-15.  Plaintiffs additionally allege that the work of Servpro's subcontractors – who Plaintiffs assert were hired without their consent or authorization – also was deficient.  Id. at ¶¶ 17-18, 20.  Plaintiffs complained to Defendant about the quality of the work being performed, but Defendant took no action.  Id. at ¶ 22.  Dissatisfied with the repair and restoration work, Plaintiffs asked Servpro and its subcontractors to stop work on their property.  Id. at ¶ 23.  Defendant then stopped payments to Plaintiffs for their repair and restoration expenses services and further denied other benefits allegedly due to them under their Policy.  Id. at ¶ 24.

In their Complaint, Plaintiffs identify specific issues with Defendant's conduct that they assert are actionable.  Id. at ¶¶ 6, 8-9, 11, 16-19, 21-22, 24.  In particular, Plaintiffs allege that Defendant (i) represented to them that Servpro was capable of performing the repair and

restoration work on their property; (ii) forced them to retain Servpro to do the repair and restoration work, despite knowing (either actually or constructively) that Servpro was incapable of performing such work; (iii) failed to address their complaints about Servpro's (and the subcontractors') work, or otherwise remedy the situation; (iv) continued to pay Servpro, despite its deficient work; and (v) improperly failed to pay their claim and other benefits after Plaintiffs chose to terminate Servpro's services and retain another contractor. Id. Based on this conduct, Plaintiffs assert six causes of action against Defendant, including: (1) Bad Faith (Count One); (2) violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL") (Count Two); (3) breach of contract (Count Three); (4) breach of the fiduciary duty of good faith and fair dealing (Count Four); and (5) negligence (Count Five). Defendant seeks dismissal of Counts One, Two, Four and Five of Plaintiffs' Complaint.

## ANALYSIS

### A. Legal Standards Under Rule 12(b)(6)

It is well-established that Federal Rule of Civil Procedure 8(a) "'requires only a short and plain statement of the claim showing that the pleader is entitled to relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds on which it rests.'" Bell Atlantic Corp. v. Twombly, 127 S. Ct. 1955, 1964 (2007). Additionally, the Third Circuit, interpreting Twombly, has stated that to survive a motion under Federal Rule of Civil Procedure 12(b)(6), a plaintiff is required to raise "'[f]actual allegations . . . enough to raise a right to relief above the speculative level.'" Phillips v. County of Allegheny, 515 F.3d 224, 234 (3d Cir. 2008) (quoting Twombly, 127 S. Ct. at 1965).

When addressing a motion to dismiss under Rule 12(b)(6), "the facts alleged [in the complaint] must be taken as true and a complaint may not be dismissed merely because it appears unlikely that the plaintiff can prove those facts or will ultimately prevail on the merits."

Id. at 231 (citing Twombly, 127 S. Ct. at 1964-65, 1969 n. 8). The inquiry is whether the facts alleged raise a reasonable expectation that discovery will reveal evidence of the necessary elements of a claim. Twombly, 127 S. Ct. at 1965.

### B. Count One: Statutory Bad Faith Claim

In Count One of their Complaint, Plaintiffs allege a claim of bad faith. Defendant's key argument is that Plaintiffs' bad faith claim fails to state a claim because their allegations consist only of allegations of negligence, which is below the threshold required for a showing of bad faith. (Brief in Support of Def's Mot. to Dismiss (Doc. 8) ("Def's Br.") at 15-16.) The Court disagrees.

Section 8371 provides:

> In an action arising under an insurance policy, if the court finds that the insurer has acted in bad faith toward the insured, the court may take all of the following actions:
>
> (1) Award interest on the amount of the claim from the date the claim was made by the insured in an amount equal to the prime rate of interest plus 3%.
>
> (2) Award punitive damages against the insurer.
>
> (3) Assess court costs and attorney fees against the insurer.

42 Pa. C.S.A. § 8371. The phrase "bad faith" is not defined in Section 8371, but courts have defined it in the insurance context to mean "any frivolous or unfounded refusal to pay proceeds of a policy." Terletsky v. Prudential Property and Cas. Ins. Co., 649 A.2d 680, 688 (Pa. Super. Ct. 1994); see also Northwestern Mut. Life Ins. Co. v. Babayan, 430 F.3d 121, 137 (3d Cir. 2005) (stating that"[w]e have predicted that the Pennsylvania Supreme Court would define the term according to the definition set forth by the Pennsylvania Superior Court" in Terletsky).

To establish a bad faith claim against an insurer, the plaintiff must show that the insurer "did not have a reasonable basis for denying benefits under the policy and that [the insurer] knew

of or recklessly disregarded its lack of a reasonable basis in denying the claim." Terletsky, 649 A.2d at 688. The insurer's conduct does not need to be fraudulent, but "mere negligence or bad judgment" is insufficient to establish bad faith. Terletsky, 649 A.2d at 688; Babayan, 430 F.3d at 137. In a nutshell, the "insured must ultimately show that 'the insurer breached its duty of good faith through some motive of self-interest or ill will.'" Babayan, 430 F.3d at 137 (quoting Brown v. Progressive Ins. Co., 860 A.2d 493, 501 (Pa. Super. Ct. 2004)); see also Hanover Ins. Co. v. Ryan, No. 06-2650, 2007 WL 4456158, at *7 (E.D. Pa. Dec. 17, 2007) ("The concept of bad faith also encompasses a 'duty of good faith and fair dealing.'")

Plaintiffs' primary allegation in support of their bad faith claim is as follows:

> There existed no reasonable basis for Ohio Casualty's solicitation and repeated urging to the Cohens to retain the services of Servpro for the purposes of performing repair and restoration work on the Cohens' residence, its denial of the payments to the Cohens following Servpro's discharge, and its actions show bad faith and reckless disregard for the Cohens' rights under the policy.

(Compl. at ¶ 29.) Plaintiffs additionally assert that Defendant "acted in bad faith and in reckless disregard" for their rights under the policy by (i) failing to "properly inspect the repair and restoration work performed by Servpro and its subcontractors"; (ii) "conspiring with Servpro to force and induce the Cohens to retain the services of Servpro"; and (ii) failing to address their complaints about the work being performed by Servpro and its subcontractors. Id. at ¶¶ 30-32.

The Court finds that Plaintiffs' allegations – particularly those concerning the payment of their insurance claim – are sufficient to establish a statutory bad faith claim under Section 8371. Contrary to Defendant's arguments, these allegations go beyond merely stating that Defendant acted in a negligent manner. Plaintiffs not only assert that Defendant lacked a reasonable basis for denying further payments on their claim after they terminated Servpro, but they also repeatedly assert that Defendant acted in "reckless disregard" for their rights under the Policy.

Plaintiffs, in essence, assert that Defendant failed to fulfill its duty of good faith and fair dealing in connection with their claim. Plaintiffs' allegations of bad faith are sufficient to withstand dismissal at this early stage of the litigation. See Miller Pools, Inc. v. Nationwide Mut. Ins. Co., No. 2005-366J, 2006 WL 2850443, at *7-8 (W.D. Pa. Sept. 29, 2006) (Gibson, J.) (on motion to dismiss, finding that allegations of, among other things, dilatory and abusive claims handling, compelling plaintiff to incur unreasonable costs, and failing to provide a reasonable explanation for the basis for the denial of the claim were sufficient to state a bad faith claim). The Court recommends that Defendant's Motion to Dismiss be denied as to Count One of Plaintiffs' Complaint.[1]

### C.    Count Two:  Unfair Trade Practices and Consumer Protection Law Claim

In Count Two of their Complaint, Plaintiffs allege that Defendant's conduct constitutes "unfair and deceptive practices" in violation of Pennsylvania's Unfair Trade Practices and Consumer Protection Law ("UTPCPL"). (Compl. ¶ 41.) Defendant asserts that Plaintiffs have failed to state a claim under the UTPCPL because they have alleged only non-actionable acts of nonfeasance (e.g., the failure to pay their claim), instead of actionable acts of misfeasance.[2] (Def's Br. at 10-11.) Plaintiffs counter that that they have stated a claim because they have

---

[1] Plaintiffs title Count One of their Complaint as "Bad Faith/Violation of Unfair Insurance Practices Act Pursuant to Title 42 Pa. C.S. Section 8371." In addition to arguing that Plaintiffs have failed to state a bad faith claim, Defendant also argues that Plaintiffs' claim under the Unfair Insurance Practices Act ("UIPA") should be dismissed. There is no private cause of action under the UIPA. Kojeszewski v. Infinity Ins. Co., No. 06-1261, 2006 WL 3143445, at *3 (M.D. Pa. Oct. 31, 2006) (dismissing claim under UIPA, stating that "[i]t is well established that alleged violations of the UIPA may only be enforced by the State Insurance Commissioner, and not by way of a private cause of action.") (citing cases). To the extent, then, that Plaintiffs assert a claim under the UIPA, such a claim is dismissed. The Court notes that despite the labels Plaintiffs use, it appears that they intend to assert a statutory claim for bad faith as the statute cited throughout their Complaint – 42 Pa. C.S.A. § 8371 – is Pennsylvania's bad faith statute, not the UIPA.

[2] Defendant also asserts that Plaintiffs have failed to identify a specific section of the UTPCPL that it is alleged to have violated. Although Plaintiffs have not identified a specific statutory provision, as discussed infra, Plaintiffs' factual allegations are sufficient to provide Defendant with notice of the nature of their UPTCPL claim, e.g., fraudulent or deceptive conduct, under the notice pleading standards of Rule 8(a). See Fed. R. Civ. P. 8(a); see also Twombly, 127 S. Ct. at 1964.

alleged deceptive conduct and that the UTPCPL prohibits "unfair and deceptive acts or practices." (Pls' Reply to Def's Partial Mot. to Dismiss (Doc. 13) ("Pls' Reply") at ¶¶ 16-17.)

The UTPCPL provides a private right of action to "[a]ny person who purchases goods or services for personal, family or household purposes and suffers any ascertainable loss of money or property as a result of the use or employment by any person of a method, act or practice declared unlawful" by the statute. 73 P.S. § 201-9.2. The law is designed to protect consumers from "fraud and unfair or deceptive business practices." Commonwealth ex rel. Corbett v. People's Benefit Svcs., Inc., 923 A.2d 1230, 1236 (Pa. Commw. Ct. 2007) (citing Commonwealth by Creamer v. Monumental Properties, Inc., 329 A.2d 812 (Pa. 1974)). To this end, the UTPCPL specifically provides that certain practices constitute "unfair methods of competition" or "unfair or deceptive acts or practices," including the act of "[e]ngaging in any other fraudulent or deceptive conduct which creates a likelihood of confusion or of misunderstanding." 73 P.S. §§ 201-2(4), 201-2(4)(xxi).

The UTPCPL was amended in 1996 to make it "less restrictive" such that allegations of "fraudulent or deceptive conduct" would be sufficient to state a claim. See Commonwealth ex rel. Corbett v. Manson, 903 A.2d 69, 74 (Pa. Commw. Ct. 2006); see also Grimm v. Washington Mut. Bank, No. 08-0828, 2008 WL 2858377, at *6-7 (W.D. Pa. July 22, 2008) (McVerry, J).[3] Under the UTPCPL, a "plaintiff must show that he justifiably relied on defendant's wrongful conduct or representations and that he suffered harm as a result of that reliance." Davis v. Mony Life Ins. Co., No. 08-0938, 2008 WL 4170250, at *6 (W.D. Pa. Sept. 2, 2008) (Schwab, J.)

---

[3] In Grimm, the Honorable Terrence F. McVerry noted the disagreement among the Pennsylvania courts as to whether the UPTCPL continues to require a plaintiff to plead the common law elements of fraud. See Grimm, 2008 WL 2858377, at *6. Judge McVerry stated that he was "persuaded by the reasoning of the Commonwealth Court and the[] federal courts" that have concluded that a plaintiff need not establish the elements of common law fraud, but rather can plead deception. Id. Although this issue was not raised by the parties, the Court notes that it agrees with Judge McVerry and is similarly persuaded that allegations of deception are sufficient to state a claim under the UPTCPL.

(citing Weinberg v. Sun Co., Inc., 777 A.2d 442 (Pa. 2001)). In the insurance context, "only malfeasance, the improper performance of a contractual obligation, raises a cause of action under the [UPTCPL], and an insurer's mere refusal to pay a claim which constitutes nonfeasance, the failure to perform a contractual duty, is not actionable." Horowitz v. Federal Kemper Life Assur. Co., 57 F.3d 300, 307 (3d Cir. 1995). In addition, the statute is to be construed liberally to effectuate its purposes. People's Benefit Svcs., Inc., 923 A.2d at 1236.

Contrary to Defendant's contention, Plaintiffs have alleged more than the mere refusal to pay their claim. A cursory review of Plaintiffs' factual allegations reveals that Plaintiffs also aver that Defendant essentially forced them into hiring Servpro based on representations about the quality of Servpro's work, but that Servpro was unable to properly complete the repair and restoration work on their property. (Compl. at ¶¶ 8, 9, 11, 16.) Plaintiffs additionally allege that Defendant knew or should have known that Servpro was "not adequately equipped, prepared and/or had adequate experience to perform the repair and restoration work of such magnitude, volume and complexity as the [Plaintiffs'] project required." Id. at ¶ 9. The Court finds that Plaintiffs' factual allegations contain assertions of misfeasance and are sufficient to withstand Defendant's motion. See Grimm, 2008 WL 2858377, at *5-6 (denying motion to dismiss UPTCPL claim because plaintiffs alleged a violation of the law based on a practice of "guaranteeing fraud protection in the context of the cardholder agreement and by failing to provide such protection."); Littleton v. State Farm Fire & Cas. Co., No. 07-01515, 2007 WL 3237516, at *3 (M.D. Pa. Oct. 30, 2007) (denying motion to dismiss because allegations described actionable "affirmative fraudulent representations"). Accordingly, the Court recommends that Defendant's Motion to Dismiss be denied as to Count Two of Plaintiffs' Complaint.

### D. Count Four: Breach of Fiduciary Duty of Good Faith and Fair Dealing Claim

In Count Four of their Complaint, Plaintiffs assert that Defendant violated their "fiduciary duty of good faith and fair dealing." (Compl. at ¶¶ 46-49.) Defendant seeks dismissal of Count Four on the ground that the claim is "intertwined" with Plaintiffs' breach of contract claim. (Def's Br. at 9.) Essentially, Defendant seeks dismissal on the ground that the claim is duplicative of the Plaintiffs' breach of contract claim. The Court agrees.

In Pennsylvania, the contractual relationship between insurers and insureds does not automatically give rise to a fiduciary relationship. Ross v. Met. Life Ins. Co., 411 F. Supp. 2d 571, 583 (W.D. Pa. 2006) (Ambrose, C.J.) (citing Belmont Holdings Corp. v. Unicare Life & Health Ins. Co., No. 98-2365, 1999 WL 124389 (E.D. Pa. Feb. 5, 1999)). Rather, "insurers assume fiduciary relationships with their insureds when an insurer asserts a stated right under a policy to handle all claims against its insured." Belmont Holdings, 1999 WL 124389, at *4 (citing, inter alia, Connecticut Indem. Co. v. Markman, No. 93-799, 1993 WL 304056, at *5 (E.D. Pa. Aug. 6, 1993)). However, "[a]lthough the duty of good faith and fair dealing closely resembles the duty owed by a fiduciary, Pennsylvania law does not establish a fiduciary duty based on the duty of good faith and fair dealing." Belmont Holdings, 1999 WL 124389, at *4 (citing cases).

Plaintiffs assert that Defendant owed them "a fiduciary duty of utmost good faith and fair dealing by virtue of entering into [a] contract of insurance" with them. (Compl. ¶ 47.) Thus, Plaintiffs' claim is premised on their contractual insurer-insured relationship and the purported fiduciary duty of good faith and fair dealing. But, a breach of fiduciary duty claim based on the duty of good faith and fair dealing is not recognized under Pennsylvania law. To the extent Plaintiffs believe that Defendant breached its fiduciary duty of good faith and fair dealing, they

may assert this in a breach of contract claim. See, e.g., Belmont Holdings, 1999 WL 124389, at *4 ("A breach of fiduciary duty may give rise to a claim for breach of contract.") Indeed, Plaintiffs appear to be doing so insofar as they admit that their allegations in Count Four are no different than their allegations in their breach of contract claim in Count Three. (See Pls' Reply at ¶ 13.)

Because Count Four of Plaintiffs' Complaint is redundant of the breach of contract claim in Count Three, the Court recommends that Defendant's Motion to Dismiss as to Count Four be granted and that Count Four of Plaintiffs' Complaint be dismissed, with prejudice. See Ross, 411 F. Supp. 2d at 583 (dismissing breach of fiduciary duty claim as redundant of breach of contract claim where plaintiff premised fiduciary duty claim on notion that insurer did not fulfill its duty of good faith and fair dealing); Belmont Holdings, 1999 WL 124389, at *4 (same).[4]

### E. Count Five: Negligence Claim

In Count Five of their Complaint, Plaintiffs plead a claim for negligence in which they assert that Defendant owed them a "duty to adjust their insurance claim and pay such amounts as are properly due Plaintiffs under the aforesaid insurance policy." (Compl. ¶ 51.) They further allege that Defendant breached this duty by, inter alia, forcing them to hire Servpro, failing to inspect the work being performed by Servpro, authorizing Servpro to hire subcontractors without their consent, failing to address their complaints concerning the work being performed by Servpro and the subcontractors, refusing to conduct a proper investigation and denying coverage for the repair and restoration work they had performed after terminating Servpro and its

---

[4] Notably, the Court also finds that Count Four is redundant of Plaintiffs' bad faith claim in Count One, which claim this Court has recommended remain in this action at this juncture. Belmont Holdings, 1999 WL 124389, at *4 (dismissing breach of fiduciary duty claim as redundant of bad faith claim); see also Wood v. Allstate Ins. Co., No. 96-4574, 1996 WL 637832, at *2 (E.D. Pa. Nov. 4, 1996) (dismissing as redundant the breach of fiduciary duty claim premised on the duty of good faith and fair dealing, noting that the bad faith claim "subsumes claims for breach of fiduciary duty"). For this additional reason, the Court recommends dismissal of Count Four of Plaintiffs' Complaint.

subcontractors.  Id. at ¶ 52.  Defendant invokes the "gist of the action" doctrine and argues that Count Five should be dismissed because it is improperly duplicative of the breach of contract claim in Count Three of the Complaint.  (Def's Br. at 4-6.)

The "gist of the action" doctrine is "designed to maintain the conceptual distinction between breach of contract claims and tort claims" and precludes a party from restating a claim based on a contract as a tort claim.  eToll, Inc. v. Elias/Savion Advertising, Inc., 811 A.2d 10, 14 (Pa. Super. Ct. 2002).  "[A] claim should be limited to a contract claim when 'the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts.'"  Id. (quoting Bohler-Uddeholm Am., Inc. v. Ellwood Group, Inc., 247 F.3d 79, 104 (3d Cir. 2001)).  The doctrine has been interpreted to bar tort claims (i) that arise solely from a contract; (ii) where the alleged duties that are the basis of the negligence claim are based on a contract; (iii) where liability, if any, flows from a contract; and/or (iv) where the tort claim "essentially duplicates a breach of contract claim or the success of which is wholly dependent on the terms of a contract."  eToll, 811 A.2d at 19.  To classify a claim as a tort action, "'the wrong ascribed to defendant must be the gist of the action, the contract being collateral.'"  Id. at 15 (citations omitted).

Plaintiffs base their negligence claim on the purported "duty to adjust their insurance claim and pay such amounts as are properly due."  (Compl. ¶ 51.)  The only source cited by Plaintiffs for this duty is the insurance policy – a contract.  Id.  Thus, the only source of a duty owed to Plaintiffs is a contract between the parties and nothing more.  Indeed, but for the insurance policy issued by Defendant to Plaintiffs, there would be no relationship between the parties and Defendant would owe no obligations to Plaintiffs.  See Kojeszewski v. Infinity Ins. Co., No. 06-1261, 2006 WL 3143445, at *3 (M.D. Pa. Oct. 31, 2006) ("insurers do not have a

general affirmative social duty to provide insurance coverage to members of the public. Thus, any duty breached by [the insurer] must arise out of the insurance contract between it and [the insured].").  The contract, therefore, is anything but collateral to Plaintiffs' negligence claim.  Instead, the contract, i.e., the insurance policy, between Plaintiffs and Defendant is integral to Plaintiffs' claim.  For these reasons, Plaintiffs' negligence fails as a matter of law and the Court recommends that Defendant's Motion to Dismiss as to Count Five be granted and that Count Five of Plaintiffs' Complaint be dismissed, with prejudice.

**CONCLUSION**

For all of the reasons stated above, Defendant's Motion to Dismiss Pursuant to Federal Rule of Civil Procedure 12(b)(6) (Doc. 7) should be granted in part and denied in part. Specifically, Defendant's Motion to Dismiss should be denied as to Counts One and Two of Plaintiffs' Complaint.  Defendant's Motion to Dismiss should be granted as to Counts Four and Five of Plaintiffs' Complaint and those counts should be dismissed, with prejudice.

In accordance with the Magistrates Act, 20 U.S.C. § 636(b)(1)(B) and (C), and Rule 72.1.4(B) of the Local Rules for Magistrates, objections to this Report and Recommendation are due by February 17, 2009.  Responses to objections are due by March 2, 2009.

s/ Cathy Bissoon
Cathy Bissoon
U.S. Magistrate Judge

January 30, 2009

cc (via email):

Monte J. Rabner, Esq.
George M. Evan, Esq.
Edward A. Schenck, Esq.